IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NETVIEW TECHNOLOGIES, INC.

        Plaintiff and
        Counterclaim-Defendant,

v.

MICROSOFT CORPORATION

        Defendant and
        Counterclaim-Plaintiff.

CIVIL ACTION NO. 09-cv-12072 DPW

ORAL ARGUMENT REQUESTED

**MICROSOFT CORPORATION'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. § 101**

TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     THE CLAIMS RECITE ABSTRACT MATHEMATICAL OPERATIONS ...................... 2

III.    THE ABSTRACTNESS EXCEPTION IS NOT LIMITED TO FORMULAS ................. 3

IV.     THE PTO'S GUIDELINES CONFIRM NETVIEW'S LEGAL ERROR ......................... 5

V.      NETVIEW CITES NO PARTICULAR MACHINE REQUIRED BY THE
        CLAIMS BUT NOT NECESSARY TO IMPLEMENTING THE ALGORITHM ............ 5

VI.     NETVIEW CITES NO BINDING PRECEDENT IN ITS FAVOR .................................. 7

VII.    NO ESTOPPEL CAN SAVE A CLAIM INVALID UNDER SECTION 101 ................... 8

VIII.   THERE IS NO REASON TO DELAY RULING UNTIL *MARKMAN* .............................. 9

IX.     CONCLUSION ............................................................................................................ 9

## TABLE OF AUTHORITIES

Page

Cases

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010) ................................................................................................ passim

*Diamond v. Diehr*,
450 U.S. 175 (1981) ..................................................................................................... passim

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ....................................................................................................... passim

*In re Alappat*,
33 F.3d 1526 (Fed. Cir. 1994) ............................................................................................ 7

*In re Bernhart*,
684 F.2d 902 (C.C.P.A. 1982) ............................................................................................ 8

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) (*en banc*),
*aff'd sub nom. Bilski v. Kappos*, 130 S. Ct. 3218 (2010) .............................................. passim

*In re Flook*,
559 F.2d 21 (C.C.P.A. 1977),
*rev'd sub nom. Parker v. Flook*, 437 U.S. 584 (1978) .................................................... passim

*In re Grams*,
888 F.2d 835 (Fed. Cir. 1989) ............................................................................................ 3

*In re Meyer*,
688 F.2d 789 (C.C.P.A. 1982) ............................................................................................ 4

*In re Pardo*,
684 F.2d 912 (C.C.P.A. 1982) ............................................................................................ 7

*In re Schrader*,
22 F.3d 290 (Fed. Cir. 1994) .............................................................................................. 3

*Parker v. Flook*,
437 U.S. 584 (1978) ...................................................................................................... passim

*SiRF Tech., Inc. v. ITC*,
601 F.3d 1319 (Fed. Cir. 2010) ........................................................................................... 8

*Ultramercial, LLC v. Hulu, LLC*,
No. CV 09-06918 RGK (PLAx), 2010 WL 3360098 (C.D. Cal. August 13, 2010) .................. 9

*WMS Gaming, Inc. v. Inter. Game Techn.*,
184 F.3d 1339 (Fed. Cir. 1994) .......................................................................................... 9

*Wyers v. Master Lock Co.*,
__ F.3d ___, 2010 WL 2901839 (Fed. Cir. 2010) ............................................................... 8

Rules

Fed. R. Civ. P. 12 ................................................................................................................ 1, 9

Statutes

35 U.S.C. § 101 ................................................................................................................ passim

## I.  __INTRODUCTION__

NetView's Opposition rests on a fundamental error of law and is replete with a series of irrelevant allegations that serve only to distract from the narrow legal issue before the Court: whether the asserted patent's claims preempt an abstract idea in some field of use, as was the case in *Benson*, *Flook* and *Bilski*, but not in *Diehr*.

The following core points supporting this Motion stand undisputed:

- This motion presents a question of law without any genuine dispute of material fact.  (*See* Moving Mem. at 2, 18-19.)

- The Patent Office granted the asserted patent under a different (more lenient and now-rejected) legal standard.  (*Id*. at 2.)

- Limiting a claimed abstract idea to use in a "particular technological environment" or "one field of use" cannot save the claim from invalidity.  (*Id*. at 8.)

- The patent does not restrict the type of computing device used to perform its calculations or operations.  Any device (now existing or future invented) capable of performing its mathematical operations may be used.  (*Id*. at 11-12, 14-15.)

The Opposition wanders from the narrow legal issue before the Court to immaterial and unsupported allegations about an unrelated Rule 12 motion, alleged discovery disputes, various patent applications of Microsoft not in suit, and an *amicus* brief filed prior to the Supreme Court's *Bilski v. Kappos* ruling.  None of these distractions is relevant to whether the asserted patent's claims preempt an abstract idea in some field of use, which is the sole issue presented by this Motion.  For example, the Federal Circuit has squarely rejected NetView's implication that an alleged infringer's own (allegedly inconsistent) patenting efforts are relevant to the validity of an asserted patent claim.

1

What is germane and what is disputed is whether a purely mathematical operation is an "abstract idea." NetView wrongly suggests that a mathematical operation is only an abstract idea when it is expressed using a specific formula. But no court has ever adopted this definition. As confirmed by both the Supreme Court and the Federal Circuit in their *Bilski* rulings, the abstractness exception to patent eligibility is not so limited. Under the governing precedents, the mathematical operations recited in and preempted by the asserted patent's claims in suit are without doubt the type of abstract idea that cannot be patented. Indeed, as explained below, one of NetView's main arguments reinforces this conclusion.

## II.      THE CLAIMS RECITE ABSTRACT MATHEMATICAL OPERATIONS

As was the case in *Benson*, *Flook* and *Bilski*, the entirety of the claims in suit recite an abstract idea, as explained in the Moving Memo:

- "Claim 1 recites a procedure for defining a mathematical function and then using that function in a computation, and nothing more. That is the epitome of an abstract idea that cannot be patented." (*Id*. at 12-13);

- "Steps 1-2 of the claim's algorithm . . . . The fifth step of this algorithm . . . . Again, the claim does not specifically identify any particular machine, device or mechanism as performing any of these five steps of the algorithm. Nor does the claim specify any particular substrate or medium as storing the numbers used in or output by the algorithm. In other words, Claim 1 claims protection for the algorithm purely in the abstract." (*Id*. at 13);

- "The same problem of abstractness appears in each of the other 33 claims of this patent. ('776 Patent at 26:24-28:47.) The claims collectively recite about 34 additional algorithmic steps— . . . . Thus, these other claims are likewise directed to

abstract ideas to even a greater extent than the claims rejected in *Benson*, *Flook* and *Bilski* . . . ." (*Id*. at 15).

Despite Microsoft repeating that the multi-step algorithms/procedures recited in the claims are the abstract ideas preempted by the claims, NetView suggests that Microsoft did not identify the abstract idea in question: "Microsoft fails to identify even one mathematical algorithm that is pre-empted impermissibly . . . ." (Opp. Mem. at 2.) That is incorrect. As quoted above, the entirety of each claim is directed to an abstract idea, namely a mathematical procedure and algorithm (including data gathering steps) for defining a function and then using that function to perform calculations.

## III.    THE ABSTRACTNESS EXCEPTION IS NOT LIMITED TO FORMULAS

NetView's primary argument to save these claims appears to be that one may patent a mathematical abstract idea so long as the claims are not expressed as a specific mathematical formula, which it equates with a "particular mathematical algorithm." (Opp. Mem. at 14-17.) This theory of law has no support in any case cited by NetView, and is refuted by the Supreme Court and Federal Circuit precedents cited by both parties. Indeed, not even under the old (more lenient and now rejected) Section 101 standards did it matter how the mathematical algorithm was expressed: "It is of no moment that the algorithm is not expressed in terms of a mathematical formula. Words used in a claim operating on data to solve a problem can serve the save purpose as a formula." *In re Grams*, 888 F.2d 835, 837 n. 1 (Fed. Cir. 1989) (rejecting method claims reciting "parameters," under a now-rejected test for compliance with Section 101.) One cannot validly preempt a broad class of mathematical solutions any more than one can validly preempt a particular example of such a solution, such as a particular formula.

For example, the *en banc* Federal Circuit in *In re Bilski* explained that the Federal Circuit, in *In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994), had "held the claims to be drawn to

3

unpatentable subject matter, namely a mathematical optimization algorithm." *In re Bilski*, 545

F.3d 943, 963 (Fed. Cir. 2008).  Rejected Claim 1 of that patent application is reproduced below,

to illustrate that a mathematical algorithm under Section 101 need not include or even look like a

mathematical formula:

> 1. A method of competitively bidding on a plurality of items comprising the steps
> of identifying a plurality of related items in a record, offering said plurality of
> items to a plurality of potential bidders, receiving bids from said bidders for both
> individual ones of said items and a plurality of groups of said items, each of said
> groups including one or more of said items, said items and groups being any
> number of all of said individual ones and all of the possible combinations of said
> items, entering said bids in said record, indexing each of said bids to one of said
> individual ones or said groups of said items, and assembling a completion of all
> said bids on said items and groups, said completion identifying a bid for all of
> said items at a prevailing total price, identifying in said record all of said bids
> corresponding to said prevailing total price.

22 F.3d at 292. [1]

 And, of course, the Supreme Court confirmed that the claims rejected in *Bilski v. Kappos*,

were directed to an abstract idea, even those claims without a particular formula.  (Moving Mem.

at 6-7.)

 Therefore, NetView's opposition is based on a fundamental error of law.  The

abstractness exception to patent eligibility is not limited to specific formulas.

 There can be no serious dispute here that the claimed operations are mathematical in

nature, as described in the patent itself.  Defining parameters, receiving values, computing

values, using formulas, rendering output values, etc.; all of this indisputably is mathematical in

nature, and qualifies as an abstract idea and mathematical algorithm under the above precedents.

---

[1]   Similarly, the *en banc In re Bilski* Court confirmed that another claim the court had rejected,
in *In re Meyer*, 688 F.2d 789 (C.C.P.A. 1982), "was effectively drawn only to 'a mathematical
algorithm representing a mental process,' … ."  *In re Bilski*, 545 F.3d 943, 965 (Fed. Cir. 2008).
Again, that algorithmic claim lacked a specific formula.  *See* 688 F.2d at 792.

**IV.**   **THE PTO'S GUIDELINES CONFIRM NETVIEW'S LEGAL ERROR**

NetView cites the PTO's July 27, 2010, Interim Guidance, at 75 Fed. Reg. 43922.  Those guidelines support Microsoft's position and confirm NetView's legal error.

The PTO does not limit mathematical concepts to specific formulas.  Rather, in applying the "Abstract Idea Exception to Subject Matter Eligibility" (Sec. III, *id.* at 43924, first column), the PTO describes "general concepts" (IV, D, *id.* at 43925, third column) as including "mathematical concepts (e.g., algorithms, spatial relationships, geometry)" (*id.* at 43926, first column).  And, the PTO recognizes that an abstract idea may be a "combination of concepts." (Sec. V, *id.* at 43926, first column).  And, it references patent claims that specifically identify a particular machine "(not any and all machines)."  (Sec. IV, A, 1, at 43925, second column).

**V.**   **NETVIEW CITES NO PARTICULAR MACHINE REQUIRED BY THE CLAIMS BUT NOT NECESSARY TO IMPLEMENTING THE ALGORITHM**

NetView does not directly address the preemption issue at the heart of the *Benson-Flook-Diehr-Bilski* case law (Moving Mem. at 2-4, 8-9), nor demonstrate that the asserted claims are like those allowed in *Diehr* (*id.* at 4), nor argue that the mathematical operations recited in the claims are not preempted in the patent's alleged spreadsheet-based data processing technical environment and field (*id.* at 12-15).  Under *Bilski v. Kappos*, these legal issues are at the heart of this Motion.

It is undisputed that Claim 1 does not expressly recite a computer, or computer-readable media, or computer processor executing computer program instructions.  NetView does not deny this, but instead alludes to some "programmed computer environments" and "programmed machine environment" as allegedly being implied in the claims.  But these claims would not survive even if the quoted phrases were explicitly recited.  On the contrary, NetView's argument further confirms the invalidity of these claims.

5

Importantly, NetView does not contend that the claims require some particular machine **which is unnecessary** to perform the "defining," "associating . . . to define," "receiving," "computing," or "rendering" algorithmic and data gathering steps of Claim 1.  On the contrary, NetView repeatedly contends that these alleged "environments" are "required" "to perform the steps" of the mathematical procedures recited in the claims.  (Opp. Mem. at 4, 9, 10.)  In other words, the "programmed environments" asserted by NetView are said by NetView to be required in all uses of the claims' algorithm, as was true of the "reentrant shift register" in *Benson*.  This is very different from voluntarily adding a particular machine to a method claim—a machine **not required** by all practical uses of algorithm—in order to narrow the scope of the claim and permit non-infringing use of the claims' algorithms on other, claim-excluded machines, as was true in *Diehr* (claims limited to particular rubber-curing machines).  Thus, NetView's argument further demonstrates the invalidity of these claims.  *Cf. Bilski v. Kappos*, 130 S. Ct. at 3230 (Section 101 prohibits patenting a mathematical algorithm or other abstract idea even within a single field of use or technological environment.); *Benson*, 409 U.S. at 65, 71-72 (since the algorithm had "no substantial practical application" other than with programmable digital computers, tying the algorithm to such devices could not save the patent; granting the patent "would wholly pre-empt the [algorithm] and in practical effect would be a patent on the algorithm itself.") (quoted with approval in *Bilski v. Kappos*).

Nor does NetView identify any way to perform the algorithmic and data gathering steps recited in any of these claims, within the patent's field of use, but still avoid infringement by performing those steps on a machine excluded by the claims.  Unlike the patent applicant in *Diehr*, but like the applicants in *Benson*, *Flook*, and *Bilski*, NetView cannot identify any such free-and-clear machine because these claims do not specify any particular non-preemptive

machine as being required.  This is another way in which these claims are like those in *Benson*, *Flook* and *Bilski*, not those in *Diehr*.

For example, as noted in the moving memorandum without dispute, Claim 8 in *Bilski* implied use of some type of machine capable of "performing a Monte Carlo simulation across all transactions at all locations," as recited in the claim.  But, implying that some type of capable device may be used to perform the algorithm does nothing to limit the practical preemption of that algorithm.  (Moving Mem. at 16.)

In sum, by arguing that the alleged machine "environments" are **required** for all uses of the mathematical algorithms in question, NetView reinforces why these claims violate Section 101.[2]

## VI.   NETVIEW CITES NO BINDING PRECEDENT IN ITS FAVOR

The old C.C.P.A. and Federal Circuit rulings cited by NetView (Opp. Mem. at 13-16), do not help NetView here because they (1) were decided in 1969 before any of *Benson*, *Flook*, and *Diehr* set forth the governing legal analysis, (2) apply standards that have since been abrogated by the *Bilski* decisions, and/or (3) concerned patent claims directed to machines, not nominal "methods."  *See, e.g.*, *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (claiming a "rasterizer" machine and applying since-rejected "useful, concrete, and tangible result" test); *WMS Gaming, Inc. v. Inter. Game Techn.*, 184 F.3d 1339 (Fed. Cir. 1994) (claiming a "game apparatus," and not addressing Section 101); *In re Pardo*, 684 F.2d 912 (C.C.P.A. 1982) (applying "physical

---

[2]  Moreover, it is undisputed that the input and output values in these claims need not represent any objects or articles, or anything at all.  (*See* Moving Mem. at 10, 13-14.)  Thus, these claims also do not satisfy the particular-transformation prong of the machine-or-transformation test. (See Moving Mem. at 15-16.)

steps" and *Freeman-Walter-Abele* test); *In re Bernhart*, 417 F.2d 1395 (C.C.P.A. 1969)

(applying "mental steps" test without benefit of later-issued *Benson-Flook-Diehr* rulings).

Nor does *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010), help NetView, as those

claims, unlike the ones at issue here, "explicitly require the use of a particular machine (a GPS

receiver) . . . ." *Id*. at 1333. The patent claims here do not recite a GPS or any other particular

machine. On the contrary, the claims permit any device now existing or future invented capable

of performing the claimed-recited mathematical operations. This is undisputed.

## VII.   NO ESTOPPEL CAN SAVE A CLAIM INVALID UNDER SECTION 101

As noted, most of NetView's Opposition is devoted to side issues having no bearing on

the legal issue before the Court.

For example, NetView argues that Microsoft also has sought patents that relate to

spreadsheets. Of course, nothing Microsoft has done in the Patent Office, or said in an *amicus*

brief, constitutes legal precedent. And, the claims of Microsoft's patents are different from the

claims of the patent in suit, but those differences are wholly immaterial to this Motion. Section

101, like the other patentability requirements, exists for the benefit of the public, and a private

party's actions cannot reduce those protections for the public. As the Federal Circuit observed

last month, discussing a very similar argument by a patent owner attempting to save a patent

from invalidity under Section 103 (obviousness): "Obviousness protects the public at large, not

a particular infringer, and one is not estopped from asserting the invalidity of a patent by the fact

that one has previously made an attempt to procure a patent for substantially the same invention .

. . the fact that Master Lock claimed that its external seal was novel bears no evidentiary

significance." *Wyers v. Master Lock Co.*, __ F.3d ___, 2010 WL 2901839, at *9 (Fed. Cir.

2010).

## VIII.   THERE IS NO REASON TO DELAY RULING UNTIL *MARKMAN*

There is no good reason to delay a ruling until *Markman* claim construction proceedings are completed.  NetView has not identified any non-preemptive particular machine or particular transformation of a particular article that it will seek to read into these claims.  *Cf. Ultramercial, LLC v. Hulu, LLC,* No. CV 09-06918 RGK (PLAx), 2010 WL 3360098 (C.D. Cal. August 13, 2010) (granting motion to dismiss under Rule 12(b)(6) for failure of the patent claims to satisfy Section 101, and refusing to delay ruling until *Markman* proceedings were conducted).  On the contrary, NetView has conceded, as explained above, that the "machine environment" it asks to be read into claims, is, according to NetView, required for all uses of the mathematical operations by the claims, and thus those alleged environments cannot reduce the preemptive footprint of the claims.

## IX.   CONCLUSION

As these claims recite and preempt abstract ideas, they violate Section 101.  And, as there is no genuine issue of material fact, the Court should grant this motion in its entirety.

Dated:  August 30, 2010                   Respectfully Submitted,

MICROSOFT CORPORATION,

By Its Attorneys,

/s/John D. Vandenberg
William L. Boesch (BBO No. 558742)
boesch@srbc.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street, 9th Floor
Boston, MA  02114-4737
Telephone:  (617) 227-3030
Facsimile:  (617) 523-4001

9

Kristin L. Cleveland (admitted pro hac vice)
kristin.cleveland@klarquist.com
Klaus H. Hamm (admitted pro hac vice)
klaus.hamm@klarquist.com
John D. Vandenberg (admitted pro hac vice)
john.vandenberg@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

## **CERTIFICATE OF SERVICE**

I certify that, on this 30th day of August, 2010, MICROSOFT CORPORATION'S

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF PATENT

INVALIDITY UNDER 35 U.S.C. § 101, filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants.

/s/ John D. Vandenberg
John D. Vandenberg